# NEW JERSEY REALTORS® STANDARD FORM OF
# INFORMED CONSENT TO DUAL AGENCY
# (BUYER)

©2001, NEW JERSEY REALTORS®, INC.

This Agreement evidences Buyer's consent that the Brokerage Firm, as Buyer's Agent, may act as a Disclosed Dual Agent in order to represent both Buyer and Seller in the same real estate transaction, and seeks Buyer's consent to allow Buyer's Agent to act as a Disclosed Dual Agent when the opportunity arises. Buyer should be aware that a real estate licensee may legally act as a Disclosed Dual Agent only with Buyer's and Seller's informed written consent.

Buyer understands that Disclosed Dual Agency (representing more than one party to a transaction) has the potential of creating a conflict of interest in that both Seller and Buyer may intend to rely on the Buyer's Agent's advice, and their respective interests may be adverse to each other. Therefore, when acting as a Disclosed Dual Agent, Buyer's Agent will not represent the interests of Buyer to the exclusion or detriment of the interests of a Seller; nor will Buyer's Agent represent the interests of Seller to the exclusion and detriment of the interests of Buyer.

As a Disclosed Dual Agent of both the Seller and the Buyer, Buyer's Agent will be working equally for both parties to the real estate transaction, and will provide services to complete the transaction **without** the full range of fiduciary duties ordinarily owed by an agent who represents Buyer alone, or the Seller alone. In the preparation of offers and counteroffers between Buyer and Seller, Buyer's Agent will act only as an intermediary to facilitate the transaction rather than as an active negotiator representing either the Buyer or Seller in a fiduciary capacity. By consenting to this dual agency, Buyer is giving up the right to undivided loyalty and will be owed only limited duties of disclosure by the Buyer's Agent.

For example, Buyer acknowledges that Buyer's Agent, as a Disclosed Dual Agent, is not permitted, under law, to disclose to either Buyer or Seller any confidential information which has been, or will be communicated to Buyer's Agent by either of the parties to the transaction. Moreover, Buyer's Agent is not permitted to disclose (without the express written permission of the Seller) to the Buyer that such Seller will accept a price less than the full listing price. Nor will Buyer's Agent disclose (without the express written permission of the Buyer) to the Seller that Buyer will pay a sum greater than the price offered by Buyer. It is also impermissible for Buyer's Agent to advise or counsel either the Buyer or Seller on how to gain an advantage at the expense of the other party on the basis of confidential information obtained from or about the other party.

Other potential buyers may be interested in the same properties as Buyer. It is agreed that Buyer's Agent may represent such other potential buyers whether such representation arose prior to or arises after this Consent. In any such situation, Buyer agrees that Buyer's Agent will not disclose to any other potential buyer the terms of the Buyer's offer or any other confidential information concerning the Buyer and also will not disclose to Buyer the terms of any other buyer's offer to any confidential information concerning the other buyer(s).

Buyer acknowledges receipt of the Consumer Information Statement on New Jersey Real Estate Relationships.

I, **Lisa Goetz** AS AN AUTHORIZED REPRESENTATIVE OF
(Name of Licensee)

**Weichert REALTORS** INTEND, AS OF THIS TIME, TO WORK
(Name of Firm)

WITH YOU (BUYER) AS A BUYER'S AGENT AND DISCLOSED DUAL AGENT IF THE OPPORTUNITY ARISES.

**If Buyer does not understand all of the provisions of this Informed Consent to Dual Agency, legal advice should be sought before signing.**

By signing below, Buyer acknowledges that Buyer has read and understood this Informed Consent to Dual Agency and gives consent to Buyer's Agent to act as a Disclosed Dual Agent and to work with other potential buyers.

_[signature]_                                              **Weichert REALTORS**
BUYER'S SIGNATURE                                          BROKERAGE FIRM

_[signature]_                                              **350 Nassau St**
BUYER'S SIGNATURE                                          ADDRESS

                                                           **Princeton NJ 08540**
                                                           CITY, STATE, ZIP CODE

**01/29/2024**                                             _Lisa Goetz_
DATE                                                       SALESPERSON'S SIGNATURE

NJ REALTORS® Form 122A-8/15  Page 1 of 1



DigiSign Verified - 4dadb67f-245b-46da-b74d-2a9854b6356a

# NOTICE
## TO BUYER AND SELLER
### READ THIS NOTICE BEFORE SIGNING THE CONTRACT

The Law requires real estate brokers to give you the following information before you sign this contract. It requires us to tell you that you must read all of it before you sign. The purpose is to help you in this purchase or sale.

1) As a real estate broker, I represent: ☐ the seller, not the buyer; ☐ the buyer, not the seller; ☑ both the seller and the buyer; ☐ neither the seller nor the buyer.
The title company does not represent either the seller or the buyer.

2) You will not get any legal advice unless you have your own lawyer. Neither I nor anyone from the title company can give legal advice to either the buyer or the seller. If you do not hire a lawyer, no one will represent you in legal matters now or at the closing. Neither I nor the title company will represent you in those matters.

3) The contract is the most important part of the transaction. It determines your rights, risks, and obligations. Signing the contract is a big step. A lawyer would review the contract, help you to understand it, and to negotiate its terms.

4) The contract becomes final and binding unless your lawyer cancels it within the following three business days. If you do not have a lawyer, you cannot change or cancel the contract unless the other party agrees. Neither can the real estate broker nor the title insurance company change the contract.

5) Another important service of a lawyer is to order a survey, title report, or other important reports. The lawyer will review them and help to resolve any questions that may arise about the ownership and condition of the property. These reports and survey can cost you a lot of money. A lawyer will also prepare the documents needed to close title and represent you at the closing.

6) A buyer without a lawyer runs special risks. Only a lawyer can advise a buyer about what to do if problems arise concerning the purchase of this property. The problems may be about the seller's title, the size and shape of the property, or other matters that may affect the value of the property. If either the broker or the title company knows about the problems, they should tell you. But they may not recognize the problem, see it from your point of view, or know what to do. Ordinarily, the broker and the title company have an interest in seeing that the sale is completed, because only then do they usually receive their commissions. So, their interests may differ from yours.

7) Whether you retain a lawyer is up to you. It is your decision. The purpose of this notice is to make sure that you have the information needed to make your decision.

| SELLER | DATE | BUYER _(signed)_ | DATE 29/1/24 |
|---|---|---|---|
| SELLER | DATE | BUYER | DATE |
| SELLER | DATE | BUYER | DATE |
| SELLER | DATE | BUYER | DATE |
| Listing Broker | | Selling Broker _Lisa Goetz_ | 01/29/2024 |

Prepared by: __Lisa Goetz__
Name of Real Estate Licensee



©2016 New Jersey REALTORS®, Inc.

THIS FORM MAY BE USED ONLY IN THE SALE OF A ONE TO FOUR-FAMILY RESIDENTIAL PROPERTY OR VACANT ONE-FAMILY LOTS. THIS FORM IS SUITABLE FOR USE ONLY WHERE THE SELLER HAS PREVIOUSLY EXECUTED A WRITTEN LISTING AGREEMENT.

THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL WITHIN THREE BUSINESS DAYS. DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THE CONTRACT. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.

## TABLE OF CONTENTS

1. PARTIES AND PROPERTY DESCRIPTION
2. PURCHASE PRICE
3. MANNER OF PAYMENT
4. SUFFICIENT ASSETS
5. ACCURATE DISCLOSURE OF SELLING PRICE
6. ITEMS INCLUDED IN SALE
7. ITEMS EXCLUDED FROM SALE
8. DATES AND TIMES FOR PERFORMANCE
9. CERTIFICATE OF OCCUPANCY AND ZONING COMPLIANCE
10. MUNICIPAL ASSESSMENTS
11. QUALITY AND INSURABILITY OF TITLE
12. POSSESSION, OCCUPANCY AND TENANCIES
13. LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARD
14. POINT OF ENTRY TREATMENT SYSTEMS
15. CESSPOOL REQUIREMENTS
16. INSPECTION CONTINGENCY CLAUSE
17. MEGAN'S LAW STATEMENT
18. MEGAN'S LAW REGISTRY
19. NOTIFICATION REGARDING OFF-SITE CONDITIONS
20. AIR SAFETY AND ZONING NOTICE
21. BULK SALES
22. NOTICE TO BUYER CONCERNING INSURANCE
23. MAINTENANCE AND CONDITION OF PROPERTY
24. RISK OF LOSS
25. INITIAL AND FINAL WALK-THROUGHS
26. ADJUSTMENTS AT CLOSING
27. FAILURE OF BUYER OR SELLER TO CLOSE
28. CONSUMER INFORMATION STATEMENT ACKNOWLEDGEMENT
29. DECLARATION OF BROKER(S) BUSINESS RELATIONSHIP(S)
30. BROKERS' INFORMATION AND COMMISSION
31. EQUITABLE LIEN
32. DISCLOSURE THAT BUYER OR SELLER IS A REAL ESTATE LICENSEE
33. BROKERS TO RECEIVE CLOSING DISCLOSURE AND OTHER DOCUMENTS
34. PROFESSIONAL REFERRALS
35. ATTORNEY-REVIEW CLAUSE
36. NOTICES
37. NO ASSIGNMENT
38. ELECTRONIC SIGNATURES AND DOCUMENTS
39. CORPORATE RESOLUTIONS
40. ENTIRE AGREEMENT; PARTIES LIABLE
41. APPLICABLE LAWS
42. ADDENDA
43. ADDITIONAL CONTRACTUAL PROVISIONS

1. **PARTIES AND PROPERTY DESCRIPTION:**

__Avraham Edri__ ("Buyer"), _____, ("Buyer"),

_____ ("Buyer"), _____, ("Buyer"),

whose address is/are __114 Sampson Ave Seaside Heights NJ 08751__

**AGREES TO PURCHASE FROM**

__Jennie Tumminello__ ("Seller"), _____, ("Seller"),

_____ ("Seller"), _____, ("Seller"),

whose address is/are __213 Blaine Ave A Seaside Heights NJ 08751__

**THROUGH THE BROKER(S) NAMED IN THIS CONTRACT AT THE PRICE AND TERMS STATED BELOW, THE FOLLOWING PROPERTY:**

Property Address: __213 Blaine Avenue, Seaside Heights, NJ 08751__

shown on the municipal tax map of _____ County __Ocean__

as Block __23__ Lot __13__ (the "Property") Qualifier _____ (if the Property is a condominium).

**THE WORDS "BUYER" AND "SELLER" INCLUDE ALL BUYERS AND SELLERS LISTED ABOVE.**

2. **PURCHASE PRICE:**

TOTAL PURCHASE PRICE .................................................................. $ __450,000.00__
   INITIAL DEPOSIT ......................................................................... $ __15,000.00__
   ADDITIONAL DEPOSIT ................................................................. $ __10,000.00__
   MORTGAGE ................................................................................... $ _____
   BALANCE OF PURCHASE PRICE ................................................. $ __425,000.00__

Buyer's Initials: __A.E__     Seller's Initials: _____



**3. MANNER OF PAYMENT:**
(**A**) **INITIAL DEPOSIT** to be paid by Buyer to ☑ Listing Broker ☐ Participating Broker ☐ Buyer's Attorney ☐ Title Company ☐ Other _____, on or before _____ (date) (if left blank, then within five (5) business days after the fully signed Contract has been delivered to both the Buyer and the Seller).

(**B**) **ADDITIONAL DEPOSIT** to be paid by Buyer to the party who will be responsible for holding the escrow who is identified below on or before **14 days aft contract** (date) (if left blank, then within ten (10) calendar days after the fully signed Contract has been delivered to both the Buyer and the Seller).

(**C**) **ESCROW:** All initial and additional deposit monies paid by Buyer shall be held in escrow in the NON-INTEREST BEARING TRUST ACCOUNT of **Weichert Trust Account**, ("Escrowee"), until the Closing, at which time all monies shall be paid over to Seller. The deposit monies shall not be paid over to Seller prior to the Closing, unless otherwise agreed in writing by both Buyer and Seller. If Buyer and Seller cannot agree on the disbursement of these escrow monies, the Escrowee may place the deposit monies in Court requesting the Court to resolve the dispute.

(**D**) **IF PERFORMANCE BY BUYER IS CONTINGENT UPON OBTAINING A MORTGAGE:**
If payment of the purchase price requires a mortgage loan other than by Seller or other than assumption of Seller's mortgage, Buyer shall apply for the loan through any lending institution of Buyer's choice in writing on lender's standard form within ten (10) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within ten (10) calendar days after the parties agree to the terms of this Contract, and use best efforts to obtain it. Buyer shall supply all necessary information and fees required by the proposed lender and shall authorize the lender to communicate with the real estate brokers(s) and involved attorney(s). Buyer shall obtain a written commitment from the lending institution to make a loan on the property under the following terms:

Principal Amount $_____ Type of Mortgage: ☐ VA ☐ FHA ☐ Section 203(k) ☑ Conventional ☐ Other _____
Term of Mortgage: _____ years, with monthly payments based on a _____ year payment schedule.

The written mortgage commitment must be delivered to Seller's agent, who is the Listing Broker identified in Section 30, and Seller's attorney, if applicable, no later than _____ (date) (if left blank, then within thirty (30) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within thirty (30) calendar days after the parties agree to the terms of this Contract). Thereafter, if Buyer has not obtained the commitment, then either Buyer or Seller may void this Contract by written notice to the other party and Broker(s) within ten (10) calendar days of the commitment date or any extension of the commitment date, whichever is later. If this Contract is voided, the deposit monies paid by Buyer shall be returned to Buyer notwithstanding any other provision in this Contract, provided, however, if Seller alleges in writing to Escrowee within said ten (10) calendar days of the commitment date or any extension of the commitment date, whichever is later, that the failure to obtain the mortgage commitment is the result of Buyer's bad faith, negligence, intentional conduct or failure to diligently pursue the mortgage application, then Escrowee shall not return the deposit monies to Buyer without the written authorization of Seller. If Buyer has applied for Section 203(k) financing this Contract is contingent upon mortgage approval and the Buyer's acceptance of additional required repairs as determined by the lender.

(**E**) **BALANCE OF PURCHASE PRICE:** The balance of the purchase price shall be paid by Buyer in cash, or by certified, cashier's check or trust account check.

Payment of the balance of the purchase price by Buyer shall be made at the closing, which will take place on **04/29/2024** _____ (date) at the office of Buyer's closing agent or such other place as Seller and Buyer may agree ("the Closing").

**4. SUFFICIENT ASSETS:**
Buyer represents that Buyer has or will have as of the Closing, all necessary cash assets, together with the mortgage loan proceeds, to complete the Closing. Should Buyer not have sufficient cash assets at the Closing, Buyer will be in breach of this Contract and Seller shall be entitled to any remedies as provided by law.

**5. ACCURATE DISCLOSURE OF SELLING PRICE:**
Buyer and Seller certify that this Contract accurately reflects the gross sale price as indicated in Section 2 of this Contract. Buyer and Seller understand and agree that this information shall be disclosed to the Internal Revenue Service and other government agencies as required by law.

**6. ITEMS INCLUDED IN SALE:**
The Property includes all fixtures permanently attached to the building(s), and all shrubbery, plantings and fencing, gas and electric fixtures, cooking ranges and ovens, hot water heaters, flooring, screens, storm sashes, shades, blinds, awnings, radiator covers, heating

111 apparatus and sump pumps, if any, except where owned by tenants, are included in this sale. All of the appliances shall be in working
112 order as of the Closing. Seller does not guarantee the condition of the appliances after the Deed and affidavit of title have been delivered
113 to Buyer at the Closing. The following items are also specifically included (If reference is made to the MLS Sheet and/or any other
114 document, then the document(s) referenced should be attached.):

**7. ITEMS EXCLUDED FROM SALE:** (If reference is made to the MLS Sheet and/or any other document, then the document(s) referenced should be attached.): **As per MLS, excluding personal items**

**8. DATES AND TIMES FOR PERFORMANCE:**
Seller and Buyer agree that all dates and times included in this Contract are of the essence. This means that Seller and Buyer must satisfy the terms of this Contract within the time limits that are set in this Contract or will be in default, except as otherwise provided in this Contract or required by applicable law, including but not limited to if the Closing has to be delayed either because a lender does not timely provide documents through no fault of Buyer or Seller or for three (3) business days because of the change of terms as required by the Consumer Financial Protection Bureau.

If Seller requests that any addendum or other document be signed in connection with this Contract, "final execution date," "acknowledgement date," or similar language contained in such document that sets the time period for the completion of any conditions or contingencies, including but not limited to inspections and financing, shall mean that the time will begin to run after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then from the date the parties agree to the terms of this Contract.

Buyer selects **Weichert Title Group** ("Closing Agent") as the title company, attorney or other entity or person to conduct the Closing. If the Closing Agent is an entity or person other than the Buyer's attorney, Buyer agrees to timely contact the Closing Agent to schedule the Closing after the attorney-review period is completed or, if the Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then after the parties agree to the terms of this Contract.

**9. CERTIFICATE OF OCCUPANCY AND ZONING COMPLIANCE:**
Seller makes no representations concerning existing zoning ordinances, except that Seller's use of the Property is not presently in violation of any zoning ordinances.

Some municipalities may require a Certificate of Occupancy or Housing Code Letter to be issued. If any is required for this Property, Seller shall obtain it at Seller's expense and provide to Buyer prior to Closing and shall be responsible to make and pay for any repairs required in order to obtain the Certificate or Letter. However, if this expense exceeds $ **0.50** (if left blank, then 1.5% of the purchase price) to Seller, then Seller may terminate this Contract and refund to Buyer all deposit monies plus Buyer's reasonable expenses, if any, in connection with this transaction unless Buyer elects to make repairs in excess of said amount at Buyer's expense, in which event Seller shall not have the right to terminate this Contract. In addition, Seller shall comply with all New Jersey laws, and local ordinances, including but not limited to smoke detectors, carbon monoxide detectors, fire extinguishers and indoor sprinklers, the cost of which shall be paid by Seller and not be considered as a repair cost.

**10. MUNICIPAL ASSESSMENTS:** (Seller represents that Seller ☐ has ☒ has not been notified of any such municipal assessments as explained in this Section.)

Title shall be free and clear of all assessments for municipal improvements, including but not limited to municipal liens, as well as assessments and liabilities for future assessments for improvements constructed and completed. All confirmed assessments and all unconfirmed assessments that have been or may be imposed by the municipality for improvements that have been completed as of the Closing are to be paid in full by Seller or credited to Buyer at the Closing. A confirmed assessment is a lien against the Property. An unconfirmed assessment is a potential lien that, when approved by the appropriate governmental entity, will become a legal claim against the Property.

**11. QUALITY AND INSURABILITY OF TITLE:**
At the Closing, Seller shall deliver a duly executed Bargain and Sale Deed with Covenant as to Grantor's Acts or other Deed satisfactory to Buyer. Title to the Property will be free from all claims or rights of others, except as described in this Section and Section 12 of this Contract. The Deed shall contain the full legal description of the Property.

Buyer's Initials: **A.E**    Seller's Initials: _____

This sale will be subject to utility and other easements and restrictions of record, if any, and such state of facts as an accurate survey might disclose, provided such easement or restriction does not unreasonably limit the use of the Property. Generally, an easement is a right of a person other than the owner of property to use a portion of the property for a special purpose. A restriction is a recorded limitation on the manner in which a property owner may use the property. Buyer does not have to complete the purchase, however, if any easement, restriction or facts disclosed by an accurate survey would substantially interfere with the use of the Property for residential purposes. A violation of any restriction shall not be a reason for Buyer refusing to complete the Closing as long as the title company insures Buyer against loss at regular rates. The sale also will be made subject to applicable zoning ordinances, provided that the ordinances do not render title unmarketable.

Title to the Property shall be good, marketable and insurable, at regular rates, by any title insurance company licensed to do business in New Jersey, subject only to the claims and rights described in this Section and Section 12. Buyer agrees to order a title insurance commitment (title search) and survey, if required by Buyer's lender, title company or the municipality where the Property is located, and to furnish copies to Seller. If Seller's title contains any exceptions other than as set forth in this Section, Buyer shall notify Seller and Seller shall have thirty (30) calendar days within which to eliminate those exceptions. Seller represents, to the best of Seller's knowledge, that there are no restrictions in any conveyance or plans of record that will prohibit use and/or occupancy of the Property as a __three (3)__ family residential dwelling. Seller represents that all buildings and other improvements on the Property are within its boundary lines and that no improvements on adjoining properties extend across boundary lines of the Property.

If Seller is unable to transfer the quality of title required and Buyer and Seller are unable to agree upon a reduction of the purchase price, Buyer shall have the option to either void this Contract, in which case the monies paid by Buyer toward the purchase price shall be returned to Buyer, together with the actual costs of the title search and the survey and the mortgage application fees in preparing for the Closing without further liability to Seller, or to proceed with the Closing without any reduction of the purchase price.

**12. POSSESSION, OCCUPANCY AND TENANCIES:**
**(A) Possession and Occupancy.**
Possession and occupancy will be given to Buyer at the Closing. Buyer shall be entitled to possession of the Property, and any rents or profits from the Property, immediately upon the delivery of the Deed and the Closing. Seller shall pay off any person with a claim or right affecting the Property from the proceeds of this sale at or before the Closing.

**(B) Tenancies.** ☑Applicable   ☐ Not Applicable
Occupancy will be subject to the tenancies listed below as of the Closing. Seller represents that the tenancies are not in violation of any existing Municipal, County, State or Federal rules, regulations or laws. Seller agrees to transfer all security deposits to Buyer at the Closing and to provide to Brokers and Buyer a copy of all leases concerning the tenancies, if any, along with this Contract when it is signed by Seller. Seller represents that such leases can be assigned and that Seller will assign said leases, and Buyer agrees to accept title subject to these leases.

| TENANT'S NAME | LOCATION | RENT | SECURITY DEPOSIT | TERM |
|---|---|---|---|---|
| Benjamin | 213 Blaine - B | 1,150.00 | | M to M |
| David & Terrell Studicki | 213 C Blaine - C | 1,195.00 | | 1 yr expires 6/30/24 |

Buyer acknowledges that, effective July 22, 2022, certain rental dwelling units built before 1978 are required to be inspected pursuant to N.J.S.A. 52:27D-437.16, et seq., for lead-based paint. See section 13D below.

**13. LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARD: (This section is applicable only to all dwellings built prior to 1978.)** ☑Applicable  ☐Not Applicable
**(A) Document Acknowledgement.**
Buyer acknowledges receipt of the EPA pamphlet entitled "Protect Your Family From Lead In Your Home." Moreover, a copy of a document entitled "Disclosure of Information and Acknowledgement Lead-Based Paint and Lead-Based Paint Hazards" has been fully completed and signed by Buyer, Seller and Broker(s) and is appended to and made a part of this Contract.

**(B) Lead Warning Statement.**
Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**(C) Inspection.**
The law requires that, unless Buyer and Seller agree to a longer or shorter period, Seller must allow Buyer a ten (10) calendar day period within which to complete an inspection and/or risk assessment of the Property as set forth in the next paragraph. Buyer, however, has the right to waive this requirement in its entirety.

This Contract is contingent upon an inspection and/or risk assessment (the "Inspection") of the Property by a certified inspector/risk assessor for the presence of lead-based paint and/or lead-based paint hazards. The Inspection shall be ordered and obtained by Buyer at Buyer's expense within ten (10) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within ten (10) calendar days after the parties agree to the terms in this Contract ("Completion Date"). If the Inspection indicates that no lead-based paint or lead-based paint hazard is present at the Property, this contingency clause shall be deemed null and void. If the Inspection indicates that lead-based paint or lead-based paint hazard is present at the Property, this contingency clause will terminate at the time set forth above unless, within five (5) business days from the Completion Date, Buyer delivers a copy of the inspection and/or risk assessment report to Seller and Brokers and (1) advises Seller and Brokers, in writing that Buyer is voiding this Contract; or (2) delivers to Seller and Brokers a written amendment (the "Amendment") to this Contract listing the specific existing deficiencies and corrections required by Buyer. The Amendment shall provide that Seller agrees to (a) correct the deficiencies; and (b) furnish Buyer with a certification from a certified inspector/risk assessor that the deficiencies have been corrected, before the Closing. Seller shall have _____ (if left blank, then 3) business days after receipt of the Amendment to sign and return it to Buyer or send a written counter-proposal to Buyer. If Seller does not sign and return the Amendment or fails to offer a counter-proposal, this Contract shall be null and void. If Seller offers a counter-proposal, Buyer shall have _____ (if left blank, then 3) business days after receipt of the counter-proposal to accept it. If Buyer fails to accept the counter-proposal within the time limit provided, this Contract shall be null and void.

**(D) Rental Dwelling Inspections.**
Effective July 22, 2022, all rental dwelling units built before 1978 required to be inspected pursuant to the New Jersey Lead-Based Paint Inspection Law, N.J.S.A. 52:27D-437.16, et seq., must be inspected for lead-based paint by July 22, 2024, or upon tenant turnover, whichever is earlier (note: there are several exemptions, including but not limited to seasonal rentals that are rented for less than six (6) months each year by tenants that do not have consecutive lease renewals). The law imposes an obligation on municipalities to perform or hire, or allow the property owner/landlord to directly hire, a certified lead evaluation contractor to perform the inspections of single-family, two-family, and multiple rental dwellings that are covered by the law for lead-based paint hazards, at times specified in the law. The type of inspection depends on the lead levels in children in the municipality where the rental dwelling unit is located.

Seller is advised to provide Buyer with all lead-safe certifications concerning the Property and the Guide to Lead-Based Paint in Rental Dwellings issued by the New Jersey Department of Community Affairs prior to closing.

Buyer is advised to contact the municipality in which the Property is located to determine the type of inspection, if any, required if the Property currently has a tenant or may have a tenant in the future.

**14. POINT-OF-ENTRY TREATMENT ("POET") SYSTEMS:** ☐ Applicable    ☐ Not Applicable
A point-of-entry treatment ("POET") system is a type of water treatment system used to remove contaminants from the water entering a structure from a potable well, usually through a filtration process. Seller represents that a POET system has been installed to an existing well on the Property and the POET system was installed and/or maintained using funds received from the New Jersey Spill Compensation Fund Claims Program, N.J.S.A. 58:10-23.11, et seq. The Buyer understands that Buyer will not be eligible to receive any such funds for the continued maintenance of the POET system. Pursuant to N.J.A.C. 7:1J-2.5(c), Seller agrees to notify the Department of Environmental Protection within thirty (30) calendar days of executing this Contract that the Property is to be sold.

**15. CESSPOOL REQUIREMENTS:** ☐ Applicable    ☒ Not Applicable
**(This section is applicable if the Property has a cesspool, except in certain limited circumstances set forth in N.J.A.C. 7:9A-3.16.)** Pursuant to New Jersey's Standards for Individual Subsurface Sewage Disposal Systems, N.J.A.C. 7:9A (the "Standards"), if this Contract is for the sale of real property at which any cesspool, privy, outhouse, latrine or pit toilet (collectively "Cesspool") is located, the Cesspool must be abandoned and replaced with an individual subsurface sewage disposal system at or before the time of the real property transfer, except in limited circumstances.

**(A)** Seller represents to Buyer that ☒ no Cesspool is located at or on the Property, or ☐ one or more Cesspools are located at or on the Property. **[If there are one or more Cesspools, then also check EITHER Box 1 or 2 below.]**

1. ☐ Seller agrees that, prior to the Closing and at its sole cost and expense, Seller shall abandon and replace any and all Cesspools located at or on the Property and replace such Cesspools with an individual subsurface sewage disposal system ("System") meeting all the requirements of the Standards. At or prior to the Closing, Seller shall deliver to Buyer a certificate of compliance ("Certificate of Compliance") issued by the administrative authority ("Administrative Authority") (as those terms are defined in N.J.A.C. 7:9A-2.1) with respect to the System. Notwithstanding the foregoing, if the Administrative Authority determines that a fully compliant system cannot

be installed at the Property, then Seller shall notify Buyer in writing within three (3) business days of its receipt of the Administrative Authority's determination of its intent to install either a nonconforming System or a permanent holding tank, as determined by the Administrative Authority ("Alternate System"), and Buyer shall then have the right to void this Contract by notifying Seller in writing within seven (7) business days of receipt of the notice from Seller. If Buyer fails to timely void this Contract, Buyer shall have waived its right to cancel this Contract under this paragraph, and Seller shall install the Alternate System and, at or prior to the Closing, deliver to Buyer such Certificate of Compliance or other evidence of approval of the Alternate System as may be issued by the Administrative Authority. The delivery of said Certificate of Compliance or other evidence of approval shall be a condition precedent to the Closing; or

2. ☐ Buyer agrees that, at its sole cost and expense, Buyer shall take all actions necessary to abandon and replace any and all Cesspools located at or on the Property and replace such Cesspools with a System meeting all the requirements of the Standards or an Alternate System. Buyer shall indemnify and hold Seller harmless for any and all costs, damages, claims, fines, penalties and assessments (including but not limited to reasonable attorneys' and experts' fees) arising from Buyer's violation of this paragraph. This paragraph shall survive the Closing.

**(B)** If prior to the Closing, either Buyer or Seller becomes aware of any Cesspool at or on the Property that was not disclosed by Seller at or prior to execution of this Contract, the party with knowledge of the newly identified Cesspool shall promptly, but in no event later than three (3) business days after receipt of such knowledge, advise the other party of the newly identified Cesspool in writing. In such event, the parties in good faith shall agree, no later than seven (7) business days after sending or receiving the written notice of the newly identified Cesspool, or the day preceding the scheduled Closing, whichever is sooner, to proceed pursuant to subsection (A) 1 or 2 above or such other agreement as satisfies the Standards, or either party may terminate this Contract.

**16. INSPECTION CONTINGENCY CLAUSE:**
**(A) Responsibilities of Home Ownership.**
Buyer and Seller acknowledge and agree that, because the purchase of a home is one of the most significant investments a person can make in a lifetime, all aspects of this transaction require considerable analysis and investigation by Buyer before closing title to the Property. While Brokers and salespersons who are involved in this transaction are trained as licensees under the New Jersey Licensing Act they readily acknowledge that they have had no special training or experience with respect to the complexities pertaining to the multitude of structural, topographical and environmental components of this Property. For example, and not by way of limitation, Brokers and salespersons have no special training, knowledge or experience with regard to discovering and/or evaluating physical defects, including structural defects, roof, basement, mechanical equipment, such as heating, air conditioning, and electrical systems, sewage, plumbing, exterior drainage, termite, and other types of insect infestation or damage caused by such infestation. Moreover, Brokers and salespersons similarly have no special training, knowledge or experience with regard to evaluation of possible environmental conditions which might affect the Property pertaining to the dwelling, such as the existence of radon gas, formaldehyde gas, airborne asbestos fibers, toxic chemicals, underground storage tanks, lead, mold or other pollutants in the soil, air or water.

**(B) Radon Testing, Reports and Mitigation.**
**(Radon is a radioactive gas which results from the natural breakdown of uranium in soil, rock and water. It has been found in homes all over the United States and is a carcinogen. For more information on radon, go to www.epa.gov/radon and www.nj.gov/dep/rpp/radon/ or call the NJ Radon Hot Line at 800-648-0394 or 609-984-5425.)**

If the Property has been tested for radon prior to the date of this Contract, Seller agrees to provide to Buyer, at the time of the execution of this Contract, a copy of the result of the radon test(s) and evidence of any subsequent radon mitigation or treatment of the Property. In any event, Buyer shall have the right to conduct a radon inspection/test as provided and subject to the conditions set forth in paragraph (D) below. If any test results furnished or obtained by Buyer indicate a concentration level of 4 picocuries per liter (4.0 pCi/L) or more in the subject dwelling, Buyer shall then have the right to void this Contract by notifying Seller in writing within seven (7) business days of the receipt of any such report. For the purposes of this Section 16, Seller and Buyer agree that, in the event a radon gas concentration level in the subject dwelling is determined to be less than 4 picocuries per liter (4.0 pCi/L) without any remediation, such level of radon gas concentration shall be deemed to be an acceptable level ("Acceptable Level") for the purposes of this Contract. Under those circumstances, Seller shall be under no obligation to remediate, and this contingency clause as it relates to radon shall be deemed fully satisfied.

If Buyer's qualified inspector reports that the radon gas concentration level in the subject dwelling is four picocuries per liter (4.0 pCi/L) or more, Seller shall have a seven (7) business day period after receipt of such report to notify Buyer in writing that Seller agrees to remediate the gas concentration to an Acceptable Level (unless Buyer has voided this Contract as provided in the preceding paragraph). Upon such remediation, the contingency in this Contract which relates to radon shall be deemed fully satisfied. If Seller fails to notify Buyer of Seller's agreement to so remediate, such failure to so notify shall be deemed to be a refusal by Seller to remediate the radon level to an Acceptable Level, and Buyer shall then have the right to void this Contract by notifying Seller in writing within seven (7) calendar days thereafter. If Buyer fails to void this Contract within the seven (7) business day period, Buyer shall have waived Buyer's right to cancel this Contract and this Contract shall remain in full force and effect, and Seller shall be under no obligation to remediate the radon gas concentration. If Seller agrees to remediate the radon to an Acceptable Level, such remediation and associated testing shall be completed by Seller prior to the Closing.

Buyer's Initials: A.E

Seller's Initials: _____

**(C) Infestation and/or Damage By Wood Boring Insects.**

Buyer shall have the right to have the Property inspected by a licensed exterminating company of Buyer's choice, for the purpose of determining if the Property is free from infestation and damage from termites or other wood destroying insects. If Buyer chooses to make this inspection, Buyer shall pay for the inspection unless Buyer's lender prohibits Buyer from paying, in which case Seller shall pay. The inspection must be completed and written reports must be furnished to Seller and Broker(s) within ____ (if left blank, then 14) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within ____ (if left blank, then 14) calendar days after the parties agree to the terms of this Contract. This report shall state the nature and extent of any infestation and/or damage and the full cost of treatment for any infestation. Seller agrees to treat any infestation and cure any damage at Seller's expense prior to Closing, provided however, if the cost to cure exceeds 1% of the purchase price of the Property, then either party may void this Contract provided they do so within ____ (if left blank, then 7) business days after the report has been delivered to Seller and Brokers. If Buyer and Seller are unable to agree upon who will pay for the cost to cure and neither party timely voids this Contract, then Buyer will be deemed to have waived its right to terminate this Contract and will bear the cost to cure that is over 1% of the purchase price, with Seller bearing the cost that is under 1% of the purchase price.

**(D) Buyer's Right to Inspections.**

Buyer acknowledges that the Property is being sold in an "as is" condition and that this Contract is entered into based upon the knowledge of Buyer as to the value of the land and whatever buildings are upon the Property, and not on any representation made by Seller, Brokers or their agents as to character or quality of the Property. Therefore, Buyer, at Buyer's sole cost and expense, is granted the right to have the dwelling and all other aspects of the Property, inspected and evaluated by "qualified inspectors" (as the term is defined in subsection G below) for the purpose of determining the existence of any physical defects or environmental conditions such as outlined above. If Buyer chooses to make inspections referred to in this paragraph, such inspections must be completed, and written reports including a list of repairs Buyer is requesting must be furnished to Seller and Brokers within ____ (if left blank, then 14) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within ____ (if left blank, then 14) calendar days after the parties agree to the terms of this Contract. If Buyer fails to furnish such written reports to Seller and Brokers within the **15** (if left blank, then 14) calendar days specified in this paragraph, this contingency clause shall be deemed waived by Buyer, and the Property shall be deemed acceptable by Buyer. The time period for furnishing the inspection reports is referred to as the "Inspection Time Period." Seller shall have all utilities in service for inspections.

**(E) Responsibility to Cure.**

If any physical defects or environmental conditions (other than radon or woodboring insects) are reported by the qualified inspectors to Seller within the Inspection Time Period, Seller shall then have seven (7) business days after the receipt of such reports to notify Buyer in writing that Seller shall correct or cure any of the defects set forth in such reports. If Seller fails to notify Buyer of Seller's agreement to so cure and correct, such failure to so notify shall be deemed to be a refusal by Seller to cure or correct such defects. If Seller fails to agree to cure or correct such defects within the seven (7) business day period, or if the environmental condition at the Property (other than radon) is incurable and is of such significance as to unreasonably endanger the health of Buyer, Buyer shall then have the right to void this Contract by notifying Seller in writing within seven (7) business days thereafter. If Buyer fails to void this Contract within the seven (7) business day period, Buyer shall have waived Buyer's right to cancel this Contract and this Contract shall remain in full force, and Seller shall be under no obligation to correct or cure any of the defects set forth in the inspections. If Seller agrees to correct or cure such defects, all such repair work shall be completed by Seller prior to the closing of title. Radon at the Property shall be governed by the provisions of paragraph (B), above.

**(F) Flood Hazard Area (if applicable).**

The federal and state governments have designated certain areas as flood areas. If the Property is located in a flood area, the use of the Property may be limited. If Buyer's inquiry reveals that the Property is in a flood area, Buyer may cancel this Contract within ten (10) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within ten (10) calendar days after the parties agree to the terms of this Contract. If the mortgage lender requires flood insurance, then Buyer shall be responsible for obtaining such insurance on the Property. For a flood policy to be in effect immediately, there must be a loan closing. There is a thirty (30) calendar day wait for flood policies to be in effect for cash transactions. Therefore, cash buyers are advised to make application and make advance payment for a flood policy at least thirty (30) calendar days in advance of closing if they want coverage to be in effect upon transfer of title.

Buyer's mortgage lender may require Buyer to purchase flood insurance in connection with Buyer's purchase of this Property. The National Flood Insurance Program ("NFIP") provides for the availability of flood insurance but also establishes flood insurance policy premiums based on the risk of flooding in the area where properties are located. Due to amendments to federal law governing the NFIP, those premiums are increasing and, in some cases, will rise by a substantial amount over the premiums previously charged for flood insurance for the Property. As a result, Buyer should not rely on the premiums paid for flood insurance on this Property previously as an indication of the premiums that will apply after Buyer completes the purchase. In considering Buyer's purchase of this Property, Buyer is therefore urged to consult with one or more carriers of flood insurance for a better understanding of flood insurance coverage,

the premiums that are likely to be required to purchase such insurance and any available information about how those premiums may increase in the future.

**(G) Qualifications of Inspectors.**
Where the term "qualified inspectors" is used in this Contract, it is intended to refer to persons or businesses that are licensed or certified by the State of New Jersey for such purpose.

**(H) Water Quality.**
Buyer acknowledges that Seller, the Broker(s) and/or its agent(s) make no representations concerning the quality of the drinking water or any drinking water health advisories issued by federal, state and/or municipal agencies, including but not limited to concerning manufactured chemicals, such as per - and poly- fluoalkyl substances ("PFAS"), or otherwise, at the Property, except as set forth by Seller in the Seller Property Disclosure Statement, if applicable. Buyer has the right and is advised to contact the local water utility, the municipality where the Property is located and/or the New Jersey Department of Environmental Protection to learn more about the drinking water at the Property, as well as testing, monitoring and reducing exposure to contaminants.

**17. MEGAN'S LAW STATEMENT:**
Under New Jersey law, the county prosecutor determines whether and how to provide notice of the presence of convicted sex offenders in an area. In their professional capacity, real estate licensees are not entitled to notification by the county prosecutor under Megan's Law and are unable to obtain such information for you. Upon closing, the county prosecutor may be contacted for such further information as may be disclosable to you.

**18. MEGAN'S LAW REGISTRY:**
Buyer is notified that New Jersey law establishes an Internet Registry of Sex Offenders that may be accessed at www.njsp.org. Neither Seller nor any real estate broker or salesperson make any representation as to the accuracy of the registry.

**19. NOTIFICATION REGARDING OFF-SITE CONDITIONS: (Applicable to all resale transactions.)**
Pursuant to the New Residential Construction Off-Site Conditions Disclosure Act, N.J.S.A. 46:3C-1, et seq., the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition. Buyers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the value of the property. In cases where a property is located near the border of a municipality, buyers may wish to also examine the list maintained by the neighboring municipality.

**20. AIR SAFETY AND ZONING NOTICE:**
Any person who sells or transfers a property that is in an airport safety zone as set forth in the New Jersey Air Safety and Zoning Act of 1983, N.J.S.A. 6:1-80, et seq., and appearing on a municipal map used for tax purposes, as well as Seller's agent, shall provide notice to a prospective buyer that the property is located in an airport safety zone prior to the signing of the contract of sale. The Air Safety and Zoning Act also requires that each municipality in an airport safety zone enact an ordinance or ordinances incorporating the standards promulgated under the Act and providing for their enforcement within the delineated areas in the municipality. Buyer acknowledges receipt of the following list of airports and the municipalities that may be affected by them and that Buyer has the responsibility to contact the municipal clerk of any affected municipality concerning any ordinance that may affect the Property.

| Municipality | Airport(s) | Municipality | Airport(s) |
|---|---|---|---|
| Alexandria Tp. | Alexandria & Sky Manor | Hopewell Tp. (Mercer Cty.) | Trenton-Mercer County |
| Andover Tp. | Aeroflex-Andover & Newton | Howell Tp. | Monmouth Executive |
| Bedminster Tp. | Somerset | Lacey Tp. | Ocean County |
| Berkeley Tp. | Ocean County | Lakewood Tp. | Lakewood |
| Berlin Bor. | Camden County | Lincoln Park Bor. | Lincoln Park |
| Blairstown Tp. | Blairstown | Lower Tp. | Cape May County |
| Branchburg Tp. | Somerset | Lumberton Tp. | Flying W & South Jersey Regional |
| Buena Bor. (Atlantic Cty.) | Vineland-Downtown | Manalapan Tp. (Monmouth Cty.) | Old Bridge |
| Dennis Tp. | Woodbine Municipal | Mansfield Tp. | Hackettstown |
| Eagleswood Tp. | Eagles Nest | Manville Bor. | Central Jersey Regional |
| Ewing Tp. | Trenton-Mercer County | Medford Tp. | Flying W |
| E. Hanover Tp. | Morristown Municipal | Middle Tp. | Cape May County |
| Florham Park Bor. | Morristown Municipal | Millville | Millville Municipal |
| Franklin Tp. (Gloucester Cty.) | Southern Cross & Vineland Downtown | Monroe Tp. (Gloucester Cty.) | Cross Keys & Southern Cross |
| Franklin Tp. (Hunterdon Cty.) | Sky Manor | Monroe Tp. (Middlesex Cty.) | Old Bridge |
| Franklin Tp. (Somerset Cty.) | Central Jersey Regional | Montgomery Tp. | Princeton |
| Hammonton Bor. | Hammonton Municipal | Ocean City | Ocean City |
| Hanover Tp. | Morristown Municipal | Old Bridge Tp. | Old Bridge |
| Hillsborough Tp. | Central Jersey Regional | Oldmans Tp. | Oldmans |

| Municipality | Airport(s) | Municipality | Airport(s) |
|---|---|---|---|
| Pemberton Tp. | Pemberton | Vineland City | Kroelinger & Vineland Downtown |
| Pequannock Tp. | Lincoln Park | Wall Tp. | Monmouth Executive |
| Readington Tp. | Solberg-Hunterdon | Wantage Tp. | Sussex |
| Rocky Hill Boro. | Princeton | Robbinsville | Trenton-Robbinsville |
| Southampton Tp. | Red Lion | West Milford Tp. | Greenwood Lake |
| Springfield Tp. | Red Wing | Winslow Tp. | Camden County |
| Upper Deerfield Tp. | Bucks | Woodbine Bor. | Woodbine Municipal |

The following airports are not subject to the Airport Safety and Zoning Act because they are subject to federal regulation or within the jurisdiction of the Port of Authority of New York and New Jersey and therefore are not regulated by New Jersey: Essex County Airport, Linden Airport, Newark Liberty Airport, Teterboro Airport, Little Ferry Seaplane Base, Atlantic City International Airport, and Maguire Airforce Base and NAEC Lakehurst.

**21. BULK SALES:**
The New Jersey Bulk Sales Law, N.J.S.A. 54:50-38, (the "Law") applies to the sale of certain residential property. Under the Law, Buyer may be liable for taxes owed by Seller if the Law applies and Buyer does not deliver to the Director of the New Jersey Division of Taxation (the "Division") a copy of this Contract and a notice on a form required by the Division (the "Tax Form") at least ten (10) business days prior to the Closing. If Buyer decides to deliver the Tax Form to the Division, Seller shall cooperate with Buyer by promptly providing Buyer with any information that Buyer needs to complete and deliver the Tax Form in a timely manner. Buyer promptly shall deliver to Seller a copy of any notice that Buyer receives from the Division in response to the Tax Form.

The Law does not apply to the sale of a simple dwelling house, or the sale or lease of a seasonal rental property, if Seller is an individual, estate or trust, or any combination thereof, owning the simple dwelling house or seasonal rental property as joint tenants, tenants in common or tenancy by the entirety. A simple dwelling house is a one or two family residential building, or a cooperative or condominium unit used as a residential dwelling, none of which has any commercial property. A seasonal rental property is a time share, or a dwelling unit that is rented for residential purposes for a term of not more than 125 consecutive days, by an owner that has a permanent residence elsewhere.

If, prior to the Closing, the Division notifies Buyer to withhold an amount (the "Tax Amount") from the purchase price proceeds for possible unpaid tax liabilities of Seller, Buyer's attorney or Buyer's title insurance company (the "Escrow Agent") shall withhold the Tax Amount from the closing proceeds and place that amount in escrow (the "Tax Escrow"). If the Tax Amount exceeds the amount of available closing proceeds, Seller shall bring the deficiency to the Closing and the deficiency shall be added to the Tax Escrow. If the Division directs the Escrow Agent or Buyer to remit funds from the Tax Escrow to the Division or some other entity, the Escrow Agent or Buyer shall do so. The Escrow Agent or Buyer shall only release the Tax Escrow, or the remaining balance thereof, to Seller (or as otherwise directed by the Division) upon receipt of written notice from the Division that it can be released, and that no liability will be asserted under the Law against Buyer.

**22. NOTICE TO BUYER CONCERNING INSURANCE:**
Buyer should obtain appropriate casualty and liability insurance for the Property. Buyer's mortgage lender will require that such insurance be in place at Closing. Occasionally, there are issues and delays in obtaining insurance. Be advised that a "binder" is only a temporary commitment to provide insurance coverage and is not an insurance policy. Buyer is therefore urged to contact a licensed insurance agent or broker to assist Buyer in satisfying Buyer's insurance requirements.

**23. MAINTENANCE AND CONDITION OF PROPERTY:**
Seller agrees to maintain the grounds, buildings and improvements, in good condition, subject to ordinary wear and tear. The premises shall be in "broom clean" condition and free of debris as of the Closing. Seller represents that all electrical, plumbing, heating and air conditioning systems (if applicable), together with all fixtures included within the terms of the Contract now work and shall be in proper working order at the Closing. Seller further states, that to the best of Seller's knowledge, there are currently no leaks or seepage in the roof, walls or basement. Seller does not guarantee the continuing condition of the premises as set forth in this Section after the Closing.

**24. RISK OF LOSS:**
The risk of loss or damage to the Property by fire or otherwise, except ordinary wear and tear, is the responsibility of Seller until the Closing.

**25. INITIAL AND FINAL WALK-THROUGHS:**
In addition to the inspections set forth elsewhere in this Contract, Seller agrees to permit Buyer or Buyer's duly authorized representative to conduct an initial and a final walk-through inspection of the interior and exterior of the Property at any reasonable time before the Closing. Seller shall have all utilities in service for the inspections.

**26. ADJUSTMENTS AT CLOSING:**
Seller shall pay for the preparation of the Deed, realty transfer fee, lien discharge fees, if any, and one-half of the title company charges for disbursements and attendance allowed by the Commissioner of Insurance; but all searches, title insurance premium and other conveyancing expenses are to be paid for by Buyer.

Seller and Buyer shall make prorated adjustments at Closing for items which have been paid by Seller or are due from Seller, such as real estate taxes, water and sewer charges that could be claims against the Property, rental and security deposits, association and condominium dues, and fuel in Seller's tank. Adjustments of fuel shall be based upon physical inventory and pricing by Seller's supplier. Such determination shall be conclusive.
If Buyer is assuming Seller's mortgage loan, Buyer shall credit Seller for all monies, such as real estate taxes and insurance premiums paid in advance or on deposit with Seller's mortgage lender. Buyer shall receive a credit for monies, which Seller owes to Seller's Mortgage lender, such as current interest or a deficit in the mortgage escrow account.

If the Property is used or enjoyed by not more than four families and the purchase price exceeds $1,000,000, then pursuant to N.J.S.A. 46:15-7.2, Buyer will be solely responsible for payment of the fee due for the transfer of the Property, which is the so-called "Mansion Tax", in the amount of one (1%) percent of the purchase price.

Unless an exemption applies, non-resident individuals, estates, or trusts that sell or transfer real property in New Jersey are required to make an estimated gross income tax payment to the State of New Jersey on the gain from a transfer/sale of real property (the so-called "Exit Tax,") as a condition of the recording of the deed.

If Seller is a foreign person (an individual, corporation or entity that is a non-US resident) under the Foreign Investment in Real Property Tax Act of 1980, as amended ("FIRPTA"), then with a few exceptions, a portion of the proceeds of sale may need to be withheld from Seller and paid to the Internal Revenue Service as an advance payment against Seller's tax liability. Seller agrees that, if applicable, Seller will (a) be solely responsible for payment of any state or federal income tax withholding amount(s) required by law to be paid by Seller (which Buyer may deduct from the purchase price and pay at the Closing); and (b) execute and deliver to Buyer at the Closing any and all forms, affidavits or certifications required under state and federal law to be filed in connection with the amount(s) withheld.
There shall be no adjustment on any Homestead Rebate due or to become due.

**27. FAILURE OF BUYER OR SELLER TO CLOSE:**
If Seller fails to close title to the Property in accordance with this Contract, Buyer then may commence any legal or equitable action to which Buyer may be entitled. If Buyer fails to close title in accordance with this Contract, Seller then may commence an action for damages it has suffered, and, in such case, the deposit monies paid on account of the purchase price shall be applied against such damages. If Buyer or Seller breach this Contract, the breaching party will nevertheless be liable to Brokers for the commissions in the amount set forth in this Contract, as well as reasonable attorneys' fees, costs and such other damages as are determined by the Court. If either Seller or Buyer commence such an action, in addition to any other remedy, the prevailing party will be entitled to reasonable attorneys' fees, costs and such other relief as is determined by the Court.

**28. CONSUMER INFORMATION STATEMENT ACKNOWLEDGMENT:**
By signing below, Seller and Buyer acknowledge they received the Consumer Information Statement on New Jersey Real Estate Relationships from the Broker(s) prior to the first showing of the Property.

**29. DECLARATION OF BROKER(S)'S BUSINESS RELATIONSHIP(S):**
(A) __Weichert REALTORS_____, (name of firm) and its authorized representative(s) __Lisa Goetz_____
_____
(name(s) of licensee(s))

ARE OPERATING IN THIS TRANSACTION AS A (indicate one of the following)
☐ SELLER'S AGENT    ☐ BUYER'S AGENT    ☑ DISCLOSED DUAL AGENT    ☐ TRANSACTION BROKER.

(B) (If more than one firm is participating, provide the following.) INFORMATION SUPPLIED BY_____
_____ (name of other firm.) HAS INDICATED THAT IT IS OPERATING IN THIS TRANSACTION AS A (indicate one of the following)
☐ SELLER'S AGENT    ☐ BUYER'S AGENT    ☐ TRANSACTION BROKER.

**30. BROKERS' INFORMATION AND COMMISSION:**
The commission, in accord with the previously executed listing agreement, shall be due and payable at the Closing and payment by Buyer of the purchase consideration for the Property. Seller hereby authorizes and instructs whomever is the disbursing agent to pay the full

commission as set forth below to the below-mentioned Brokerage Firm(s) out of the proceeds of sale prior to the payment of any such funds to Seller. Buyer consents to the disbursing agent making said disbursements. The commission shall be paid upon the purchase price set forth in Section 2 and shall include any amounts allocated to, among other things, furniture and fixtures.

**Weichert Realtors-Princeton**                                                                                                    
Listing Firm                                                                           REC License ID

**John J Burke**                                                                              **8935678**
Listing Agent                                                                          REC License ID

_____
Address

**(609) 921-1900**                                                                            **(609) 921-1900**
Office Telephone                          Fax                                          Agent Cell Phone
                                                                    (Per Listing Agreement)
**jburke@weichertrealtors.net**                                                  **2%**
E-mail                                                                                 **Commission due Listing Firm**

**Weichert REALTORS**                                                                         **7802605**
Participating Firm                                                                     REC License ID

**Lisa Goetz**                                                                                **1435392**
Participating Agent                                                                    REC License ID

**350 Nassau St Princeton NJ 08540**
Address

**(609) 921-1900**                                                                            **(609) 638-2234**
Office Telephone                          Fax                                          Agent Cell Phone

**lisagoetzhomes@gmail.com**                                                     **2%**
E-mail                                                                                 **Commission due Participating Firm**

**31. EQUITABLE LIEN:**
Under New Jersey law, brokers who bring the parties together in a real estate transaction are entitled to an equitable lien in the amount of their commission. This lien attaches to the property being sold from when the contract of sale is signed until the closing and then to the funds due to seller at closing, and is not contingent upon the notice provided in this Section. As a result of this lien, the party who disburses the funds at the Closing in this transaction should not release any portion of the commission to any party other than Broker(s) and, if there is a dispute with regard to the commission to be paid, should hold the disputed amount in escrow until the dispute with Broker(s) is resolved and written authorization to release the funds is provided by Broker(s).

**32. DISCLOSURE THAT BUYER OR SELLER IS A REAL ESTATE LICENSEE:** ☐ Applicable   ☑ Not Applicable
A real estate licensee in New Jersey who has an interest as a buyer or seller of real property is required to disclose in the sales contract that the person is a licensee. _____ therefore discloses that he/she is licensed in New Jersey as a real estate ☐ broker   ☐ broker-salesperson   ☐ salesperson   ☐ referral agent.

**33. BROKERS TO RECEIVE CLOSING DISCLOSURE AND OTHER DOCUMENTS:**
Buyer and Seller agree that Broker(s) involved in this transaction will be provided with the Closing Disclosure documents and any amendments to those documents in the same time and manner as the Consumer Financial Protection Bureau requires that those documents be provided to Buyer and Seller. In addition, Buyer and Seller agree that, if one or both of them hire an attorney who disapproves this Contract as provided in the Attorney-Review Clause Section, then the attorney(s) will notify the Broker(s) in writing when either this Contract is finalized or the parties decide not to proceed with the transaction.

**34. PROFESSIONAL REFERRALS:**
Seller and Buyer may request the names of attorneys, inspectors, engineers, tradespeople or other professionals from their Brokers involved in the transaction. Any names provided by Broker(s) shall not be deemed to be a recommendation or testimony of competency of the person or persons referred. Seller and Buyer shall assume full responsibility for their selection(s) and hold Brokers and/or salespersons harmless for any claim or actions resulting from the work or duties performed by these professionals.

**35. ATTORNEY-REVIEW CLAUSE:**
**(1) Study by Attorney.**
Buyer or Seller may choose to have an attorney study this Contract. If an attorney is consulted, the attorney must complete his or her review of the Contract within a three-day period. This Contract will be legally binding at the end of this three-day period unless an attorney for Buyer or Seller reviews and disapproves of the Contract.

**(2) Counting the Time.**
You count the three days from the date of delivery of the signed Contract to Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. Buyer and Seller may agree in writing to extend the three-day period for attorney review.

**(3) Notice of Disapproval.**
If an attorney for the Buyer or Seller reviews and disapproves of this Contract, the attorney must notify the Broker(s) and the other party named in this Contract within the three-day period. Otherwise this Contract will be legally binding as written. The attorney must send the notice of disapproval to the Broker(s) by fax, e-mail, personal delivery, or overnight mail with proof of delivery. Notice by overnight mail will be effective upon mailing. The personal delivery will be effective upon delivery to the Broker's office. The attorney may also, but need not, inform the Broker(s) of any suggested revision(s) in the Contract that would make it satisfactory.

**36. NOTICES:**
All notices shall be by certified mail, fax, e-mail, recognized overnight courier or electronic document (except for notices under the Attorney-Review Clause Section) or by delivering it personally. The certified letter, e-mail, reputable overnight carrier, fax or electronic document will be effective upon sending. Notices to Seller and Buyer shall be addressed to the addresses in Section 1, unless otherwise specified in writing by the respective party.

**37. NO ASSIGNMENT:**
This Contract shall not be assigned without the written consent of Seller. This means that Buyer may not transfer to anyone else Buyer's rights under this Contract to purchase the Property.

**38. ELECTRONIC SIGNATURES AND DOCUMENTS:**
Buyer and Seller agree that the New Jersey Uniform Electronic Transaction Act, N.J.S.A. 12A:12-1 to 26, applies to this transaction, including but not limited to the parties and their representatives having the right to use electronic signatures and electronic documents that are created, generated, sent, communicated, received or stored in connection with this transaction. Since Section 11 of the Act provides that acknowledging an electronic signature is not necessary for the signature of such a person where all other information required to be included is attached to or logically associated with the signature or record, such electronic signatures, including but not limited to an electronic signature of one of the parties to this Contract, do not have to be witnessed.

**39. CORPORATE RESOLUTIONS:**
If Buyer or Seller is a corporate or other entity, the person signing below on behalf of the entity represents that all required corporate resolutions have been duly approved and the person has the authority to sign on behalf of the entity.

**40. ENTIRE AGREEMENT; PARTIES LIABLE:**
This Contract contains the entire agreement of the parties. No representations have been made by any of the parties, the Broker(s) or its salespersons, except as set forth in this Contract. This Contract is binding upon all parties who sign it and all who succeed to their rights and responsibilities and only may be amended by an agreement in writing signed by Buyer and Seller.

**41. APPLICABLE LAWS:**
This Contract shall be governed by and construed in accordance with the laws of the State of New Jersey and any lawsuit relating to this Contract or the underlying transaction shall be venued in the State of New Jersey.

**42. ADDENDA:**
The following additional terms are included in the attached addenda or riders and incorporated into this Contract (check if applicable):
- ☐ Buyer's Property Sale Contingency
- ☐ Condominium/Homeowner's Associations
- ☐ Coronavirus
- ☐ FHA/VA Loans
- ☑ Lead Based Paint Disclosure (Pre-1978)
- ☐ New Construction
- ☐ Private Sewage Disposal (Other than Cesspool)
- ☐ Private Well Testing
- ☑ Properties With Three (3) or More Units
- ☐ Seller Concession
- ☐ Short Sale
- ☐ Solar Panel
- ☐ Swimming Pools
- ☐ Underground Fuel Tank(s)

**43. ADDITIONAL CONTRACTUAL PROVISIONS:**
Buyer has been advised that the front house (Unit A) is zoned for owner-occupancy. The two units B and C on the property are zoned as legal year-round rental units.

WITNESS:

_____    _____    29/1/24
                             BUYER                         Date

_____    _____    _____
                             BUYER                         Date

_____    _____    _____
                             BUYER                         Date

_____    _____    _____
                             BUYER                         Date

_____    _____    _____
                             SELLER                        Date

_____    _____    _____
                             SELLER                        Date

_____    _____    _____
                             SELLER                        Date

_____    _____    _____
                             SELLER                        Date

**CONSUMER INFORMATION STATEMENT ON NEW JERSEY REAL ESTATE RELATIONSHIPS**

In New Jersey, real estate licensees are required to disclose how they intend to work with buyers and sellers in a real estate transaction. (In rental transactions, the terms "buyers" and "sellers" should be read as "tenants" and "landlords", respectively.)

1. AS A SELLER'S AGENT OR SUBAGENT, I, AS A LICENSEE, REPRESENT THE SELLER AND ALL MATERIAL INFORMATION SUPPLIED TO ME BY THE BUYER WILL BE TOLD TO THE SELLER.

2. AS A BUYER'S AGENT, I, AS LICENSEE, REPRESENT THE BUYER AND ALL MATERIAL INFORMATION SUPPLIED TO ME BY THE SELLER WILL BE TOLD TO THE BUYER.

3. AS A DISCLOSED DUAL AGENT, I, AS A LICENSEE, REPRESENT BOTH PARTIES, HOWEVER, I MAY NOT, WITHOUT EXPRESS PERMISSION, DISCLOSE THAT THE SELLER WILL ACCEPT A PRICE LESS THAN THE LISTING PRICE OR THAT THE BUYER WILL PAY A PRICE GREATER THAN THE OFFERED PRICE.

4. AS A TRANSACTION BROKER, I, AS A LICENSEE, DO NOT REPRESENT EITHER THE BUYER OR THE SELLER. ALL INFORMATION I ACQUIRE FROM ONE PARTY MAY BE TOLD TO THE OTHER PARTY.

Before you disclose confidential information to a real estate licensee regarding a real estate transaction, you should understand what type of business relationship you have with that licensee. There are four business relationships: (1) seller's agent; (2) buyer's agent; (3) disclosed dual agent; and (4) transaction broker. Each of these relationships imposes certain legal duties and responsibilities on the licensee as well as on the seller or buyer represented. These four relationships are defined in greater detail below. Please read carefully before making your choice.

**SELLERS' AGENT**
A seller's agent WORKS ONLY FOR THE SELLER and has legal obligations, called fiduciary duties, to the seller. These include reasonable care, undivided loyalty, confidentiality and full disclosure. Seller's agents often work with buyers, but do not represent the buyers. However, in working with buyers a seller's agent must act honestly. In dealing with both parties, a seller's agent may not make any misrepresentations to either party on matters material to the transaction, such as the buyer's financial ability to pay, and must disclose defects of a material nature affecting the physical condition of the property, which a reasonable inspection by the licensee would disclose.

Seller's agents include all persons licensed with the brokerage firm, which has been authorized through a listing agreement to work as the seller's agent. In addition, other brokerage firms may accept an offer to work with the listing broker's firm as the seller's agents. In such cases, those firms and all persons licensed with such firms are called "sub-agents." Sellers who do not desire to have their property marketed through sub-agents should so inform the seller's agent.

**BUYER'S AGENT**
A buyer's agent WORKS ONLY FOR THE BUYER. A buyer's agent has fiduciary duties to the buyer, which include reasonable care, undivided loyalty, confidentiality and full disclosure. However, in dealing with sellers, a buyer's agent must act honestly. In dealing with both parties, a buyer's agent may not make any misrepresentations on matters material to the transaction, such as the buyer's financial ability to pay, and must disclose defects of a material nature affecting the physical condition of the property which a reasonable inspection by the licensee would disclose.

A buyer wishing to be represented by a buyer's agent is advised to enter into a separate written buyer agency contract with the brokerage firm, which is to work as their agent.

**DISCLOSED DUAL AGENT**
A disclosed dual agent WORKS FOR BOTH THE BUYER AND SELLER. To work as a dual agent, a firm must first obtain the informed written consent of the buyer and the seller. Therefore, before acting as a disclosed dual agent, brokerage firms must make written disclosure to both parties. Disclosed dual agency is most likely to occur when a licensee with a real estate firm working as a buyer's agent shows the buyer properties owned by sellers for whom that firm is also working as a seller's agent or sub-agent.

A real estate licensee working as a disclosed dual agent must carefully explain to each party, that, in addition to working as their agent, their firm will also work as the agent for the other party. They must also explain what effect their working as a disclosed dual agent will have on the fiduciary duties their firm owes to the buyer and to the seller. When working as a disclosed dual agent, a brokerage firm must have the express permission of a party prior to disclosing confidential information to the other party. Such information includes the highest price a buyer can afford to pay and the lowest price a seller will accept and the parties' motivation to buy or sell.

Remember, a brokerage firm acting as a disclosed dual agent will not be able to put one party's interests ahead of those of the other party and cannot advise or counsel either party on how to gain an advantage at the expense of the other party on the basis of confidential information obtained from or about the other party.

If you decide to enter into an agency relationship with a firm, which is to work as a disclosed dual agent, you are advised to sign a written agreement with that firm.

**TRANSACTION BROKER**
The New Jersey Real Estate Licensing Law does not require licensees to work in the capacity of an "agent" when providing brokerage services. A transaction broker works with a buyer or a seller or both in the sales transaction without representing anyone. A TRANSACTION BROKER DOES NOT PROMOTE THE INTERESTS OF ONE PARTY OVER THOSE OF THE OTHER PARTY TO THE TRANSACTION. Licensees with such a firm would be required to treat all parties honestly and to act in a competent manner, but they would not be required to keep confidential any information. A transaction broker can locate qualified buyers for a seller or suitable properties for a buyer. They can then work with both parties in an effort to arrive at an agreement on the sale or rental of real estate and perform tasks to facilitate the closing of a transaction.

A transaction broker primarily serves as a manager of the transaction, communicating information between the parties to assist them in arriving at a mutually acceptable agreement and in closing the transaction, but cannot advise or counsel either party on how to gain an advantage at the expense of the other party. Owners considering working with transaction brokers are advised to sign a written agreement with that firm which clearly states what services that firm will perform and how it will be paid. In addition, any transaction brokerage agreement with a seller or landlord should specifically state whether a notice on the property to be rented or sold will or will not be circulated in any or all Multiple Listing System(s) of which that firm is a member.

YOU MAY OBTAIN LEGAL ADVICE ABOUT THESE BUSINESS RELATIONSHIPS FROM YOUR OWN LAWYER.
THIS STATEMENT IS NOT A CONTRACT AND IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.

ACKNOWLEDGEMENT OF RECEIPT OF CONSUMER INFORMATION STATEMENT (CIS)

**FOR SELLERS AND LANDLORDS**
"By signing this Consumer Information Statement, I acknowledge that I received this Statement from_____(name of brokerage Firm) prior to discussing my motivation to sell or lease or my desired selling or leasing price with one of its representatives."

Signed:_____

**FOR BUYERS AND TENANTS**
"By signing this Consumer Information Statement, I acknowledge that I received this Statement from **Weichert REALTORS**_____(name of brokerage firm) prior to discussing my motivation or financial ability to buy or lease with one of its representatives."

Signed:_____
# # # #

DECLARATION OF BUSINESS RELATIONSHIP

I, **Lisa Goetz**_____, (name of licensee) as an authorized representative of **Weichert REALTORS**_____, (name of brokerage firm) intend, as of this time, to work with you as a (indicate one of the following):

___ Seller's Agent Only

___ Buyer's Agent Only

[✓] Seller's Agent and Disclosed Dual Agent if the opportunity arises

[✓] Buyer's Agent and Disclosed Dual Agent if the opportunity arises

___ Transaction Broker Only

___ Seller's Agent on properties on which this firm is acting as the seller's agent and transaction broker on other properties

DATE:_____

2012 CIS (A)

# WIRE FRAUD NOTICE

© 2018 New Jersey REALTORS®

**PROTECT YOURSELF FROM BECOMING A VICTIM OF WIRE FRAUD.** Wire fraud has become very common. It typically involves a criminal hacker sending fraudulent wire transfer instructions in an email to an unsuspecting buyer/tenant or seller/landlord in a real estate transaction that appears as though it is from a trusted source, such as the victim's broker, attorney, appraiser, home inspector or title agent. The email may look exactly like other emails that the victim received in the past from such individuals, including having the same or a similar email address, accurate loan and other financial information, and the logo of one of those individuals. If the hacker is successful, the victim will follow the bogus instructions to wire money, such as deposit money or the payment of an invoice, to the hacker's account. Once this money has been wired, it may not be possible to recover it.

We strongly recommend that, **before** you wire funds to any party, including your own attorney, real estate broker or title agent, you **personally call** them to confirm the account number and other wire instructions. You only should call them at a number that you have obtained on your own (e.g., from the sales contract, the lease, their website, etc.) and should **not** use any phone number that is in any email - **even if the email appears to be from someone you know**.

If you have any reason to believe that your money was sent to a hacker, you must immediately contact your bank and your local office of the Federal Bureau of Investigation, who can work with other agencies to try to recover your money, to advise them where and when the money was sent. You also should promptly file a complaint with the Internet Crime Center at bcc.ic3.gov.

Finally, since much of the information included in such fraudulent emails is obtained from email accounts that are not secure, we strongly recommend that you not provide any sensitive personal or financial information in an email or an attachment to an email. Whenever possible, such information, including Social Security numbers, bank account and credit card numbers and wiring instructions, should be sent by more secure means, such as by hand delivery, over the phone, or through secure mail or overnight services.

**By signing below, you indicate that you have read and understand the contents of this Notice:**

Seller/Landlord: _____Jennie Tumminello_____    Date: _____

Seller/Landlord: _____    Date: _____

Buyer/Tenant: _____Avraham Edri_____    Date: __29/1/24__

Buyer/Tenant: _____    Date: _____



**Weichert REALTORS**

**Compensation Disclosure**
**Sales**

**PROPERTY ADDRESS**: 213 Blaine Avenue, Seaside Heights, NJ 08751

**BUYER(S)**  Avraham Edri

**SELLER(S**  Jennie Tumminello

Weichert, Realtors® is acting as the broker for the:    (select one of the choices below)

☐ Buyer(s)    ☐ Seller(s)    ☒ Both  (either as a dual or as a designated agent)

This Notice is to inform you that Weichert, Realtors® will be receiving compensation in the transaction for the above referenced property as follows:

A. <u>From the Seller</u>: A percentage of the real estate commission from the Listing Broker as offered through the Multiple Listing Services (MLS):

　　　__4__ % of the Sale Price less an MLS fee of $_____ .

　　　– or –

　　　A flat commission in the amount of $_____ less an MLS fee of $_____ .

　　**AND**

B. <u>From the Buyer</u>: A flat commission in the amount of $ __0.00__ .

(No commission will be collected from the Buyer in New Jersey when the Broker is acting as a dual agent or in any jurisdiction where the Buyer's financing is provided through the VA loan program.)

By signing below, Buyer and Seller acknowledge that they have received this Compensation Disclosure prior to entering into the contract or lease.

BUYER _[signature]_____ DATE  29/1/24

BUYER _____ DATE _____

BUYER _____ DATE _____

BUYER _____ DATE _____

SELLER _____ DATE _____

SELLER _____ DATE _____

SELLER _____ DATE _____

SELLER _____ DATE _____

© Copyright 2018 Weichert, Realtors. All rights reserved. Any form of reproduction or distribution is strictly prohibited.
Rev 10/2018                                                                                                                          T453

Created by Lisa Goetz with SkySlope® Forms